## JOHN P. DEGENHART v. U. F. SHORT ET AL.

Delivered March 3, 1897.

**Negotiable Notes—Innocent Purchaser—Lien.**
    An innocent purchaser of notes given for the purchase price of land is entitled to have a lien on the land, although the purchaser gave new notes to the vendor for the same amount on the representation by the latter that he had lost the original notes, and subsequently paid the new notes.

ERROR from Dallas. Tried below before Hon. EDWARD GRAY.

*Wooten & McCoy* and *A. W. May*, for plaintiff in error.—The judgment rendered upon the original notes against plaintiff in favor of John V. Hughes, as an innocent purchaser and holder of said notes, which were secured by the vendor's lien upon the property described therein, is inconsistent with the finding that said lien was released by the action of the said George V. Hughes with regard to the same. White v. Downs, 40 Texas, 226.

*Richard Morgan*, for defendants in error.—While we concur with plaintiff in error in the opinion that the court erred in its conclusion of law that the intervener is not entitled to a lien, notwithstanding he is an innocent purchaser of the notes, and while under our cross-assignments of error we ask for a correction of this error, still we respectfully submit that it does not logically follow that, because the court has erred in its conclusions of law, it has erred in its findings of fact. On the contrary, it has erred in its conclusions of law because it is correct in its findings of fact. Whether its findings of fact are correct or not depends, not upon the correctness of its views of the law, but upon the testimony from which its findings of facts are deduced.

JAMES, CHIEF JUSTICE.—The amended pleading of plaintiff Degenhart, upon which the case went to trial, alleged, in substance, as follows: That George V. Hughes, in June, 1889, sold him a lot, taking plaintiff's notes in small amounts for the greater part of the purchase money. That afterwards, about May, 1890, Hughes represented to plaintiff that he had lost the notes, and upon this plaintiff executed to him like notes of same date, amounts and maturity, thereby replacing the originals, and also executing a deed of trust in connection with them, with T. E. Eakins as trustee. That these last mentioned notes were transferred to Ophelia Eakins, to whom plaintiff paid a number of them. That Ophelia Eakins assigned them to U. F. Short, and they becoming due, and plaintiff being unable to pay them, Eakins advertised and sold the property to Short. That afterwards, plaintiff desiring to re-purchase the property, Short conveyed it to him for $750—$50 in cash and the remainder in 28 notes of $25 each—by special warranty deed, plaintiff executing a deed of trust in connection therewith to Bennett Hill as trustee. That at this time plaintiff believed Short to be the owner of the property. That afterwards plaintiff ascertaining, as he thought, an outstanding superior title to that of Hughes, stopped paying notes to Short, who thereupon caused the trustee Bennett Hill to advertise the property for sale, when plaintiff begun this suit to restrain such sale. That since the institution of this suit Short acquired the alleged outstanding title, and again conveyed the land to plaintiff by a warranty deed dated April 8, 1895, and that plaintiff by reason of the premises now owns and is in possession of the land. That plaintiff has discovered since the institution of this suit that the original notes that Hughes had said were lost were in existence, and that Short never had been the

owner of the last set of notes, nor ever had title to the property, and that said George V. Hughes now claims and pretends that he sold the original notes to his brother John V. Hughes, who threatens to foreclose the deed of trust which plaintiff gave to secure the original notes. That plaintiff does not believe that the original notes were ever transferred to John V. Hughes, and that if he did, it was fraudulent and void, and the latter had lost his rights by his laches. That George V. Hughes is a party defendant and John V. Hughes an intervener in this case, and after asking that his cause of action against all other parties be discontinued, plaintiff prays that George V. Hughes and John V. Hughes be ordered to deliver up and cancel said notes, etc.

The intervener, John V. Hughes, alleged the sale by George V. Hughes to Degenhart of the lot, by deed retaining vendor's lien; the execution by Degenhart of the 45 vendor's lien notes, and a deed of trust to T. E. Eakins, trustee, to secure same (these were the original notes); that these notes were, before maturity of any of them, indorsed and transferred for value by George V. Hughes to the National Exchange Bank of Dallas; that afterwards the bank transferred and delivered them for value to intervener, whereby plaintiff Degenhart was liable to intervener for same, and intervener entitled to enforce the vendor's lien and deed of trust lien; that if it be true that a set of duplicate notes and deed of trust were made as alleged, intervener has and had no knowledge thereof and prayed for judgment on the notes, and for foreclosure.

To the intervention plaintiff replied by general denial; a denial that intervener owned or held the note; but, if such be the fact, then that certain payments set forth were made before their transfer to him, which should be allowed.

The answer of George V. Hughes admits the giving of the original notes and deed of trust as alleged; that he negotiated them to the said bank, together with a lot of other notes; that afterwards, in 1890, being unable to locate and find the notes, he applied to Degenhart for duplicates in lieu of those he thought lost, which duplicate notes were given; that this defendant had not parted with any of these, except those returned to plaintiff when paid; that he had never authorized a deed of trust sale in reference to the duplicate notes; and that since he transferred the original notes, he has not held or owned them, but believes that they were transferred by said bank to John V. Hughes, who holds them.

The foregoing account of the pleadings shows the nature and to some extent the history of the case. The case seems to have suffered material changes in issues. It was originally to enjoin a trust sale growing out of the second lot of notes, and finally, upon the pleadings as amended, all matters relative to this lot of notes were dropped and original parties eliminated from the case, and the questions upon which the case went to trial relate to the original set of notes, with plaintiff and George V. and John V. Hughes as sole parties.

The judgment (there being no jury) was in favor of John V. Hughes against plaintiff for $1510.50 and interest, but without lien on the land, and that plaintiff take nothing as against John V. Hughes and George V. Hughes. Degenhart complains of the judgment against him, and intervener Hughes complains, on cross-assignments, that he was not awarded a lien. These are the main questions before this court on the evidence.

We conclude, as matters of fact, that there was testimony to warrant a finding that the original notes were indorsed by George V. Hughes, and thus indorsed came into the hands of the bank in due course of trade as collateral security, without notice of any defect; that when they came to the bank not more than 18 of them were due (as found and allowed by the court); and that for valuable consideration they passed into the hands of intervener John V. Hughes. These facts material to the judgment were found by the court, upon, we think, sufficient testimony.

*Opinion.*—The first and fourth assignments of error are disposed of by the conclusions of fact.

The second assignment states that the court was inconsistent and erred, in this: That it found that the lien given in connection with the original notes had been released by the action of George V. Hughes with regard to the same; because John V. Hughes could not be an innocent purchaser of the notes and at the same time not be an innocent holder of the lien, and the court should consistently have held that Hughes, not being entitled to the lien, was likewise not entitled to recover on any of the notes. The contention that a lien should have been given is made by defendant in error in cross-assignment.

As both litigants interested in this question take the same view of it, that is, that if judgment is rendered at all, it should include a lien, it would seem unnecessary for us to go into the question at all. In view of the fact, however, that it would require a rendition of a judgment in respect to the lien, we take it that we should not disturb the judgment except for good reason, and that we should be satisfied that the judgment we render is correct.

The court clearly and unmistakably found that John V. Hughes was entitled to the benefits of the notes as an innocent purchaser for value. In the conclusions of law we find it stated that the original lien securing the notes held by the intervener has been lost by reason of the execution of the duplicate notes and deed of trust; and the subsequent acquisition of the duplicate notes by Degenhart, paying some of them to George V. Hughes and the balance of them to Short; and that the action of said George V. Hughes with regard to the same amounted to a release.

We think that it would have amounted to a release had George V. Hughes still held the original notes, or were they held by any but a bona fide purchaser. In such case the satisfaction of the duplicates

would have extinguished the originals. But the case is clearly different when the right of a third party has intervened. Degenhart, when he gave the second series, rendered it possible for both sets of negotiable notes to be or come into the hands of innocent persons, and if such a condition should have been produced through his own act, it would seem inequitable for him to deny his liability for all the notes, and a lien to the full extent of all of them.

In Moran v. Wheeler, 87 Texas, 179, it was held that, where a transferee of a negotiable vendor's lien note fails to take and record a transfer, a release from the vendor to the vendee will afford protection against the lien to the third person who, without notice, deals with the vendee. But it does not follow that the vendee would be protected. There is no reason why he should be when he settles with the vendor on the bare statement that the notes had been lost, particularly at a time when the notes are not due. In such a case he takes the risk of the notes being in the hands of others. The settlement would clearly not affect the right of the holder to enforce the notes according to their terms, inclusive of the lien expressed in them. The status of innocent purchaser of the original notes being fixed upon intervener, by the judgment of the court, he should have been given a lien, as well as a personal judgment against plaintiff.

In the third assignment no error is specified, except that the costs should not have been adjudged against Degenhart. In this there was no error. The fifth and sixth assignments are equally without merit.

The seventh and eighth assignments contend that the facts and circumstances in evidence were such as to put the intervener on notice of the true condition of things. This, in the face of conflicting testimony, we are unable to hold as matter of law. The court evidently proceeded upon the theory that the bank, having taken the notes as collateral security, in due course of business, was a bona fide purchaser and holder of such of them as had not then matured, which view the testimony warranted. It was therefore immaterial what knowledge John V. Hughes may have possessed.

We are of opinion that the judgment should be changed to award intervener a lien on the property, and, so modified, the judgment will be affirmed.

<em>Affirmed.</em>

Writ of error refused.