MARTIN MORAN v. W. E. WHEELER ET AL.

No. 187.

### 1. Release of Vendor's Lien—Mortgagee Without Notice.

A mortgagee without notice acquires a lien superior to the vendor's lien recited in the deed, where the vendor has executed a release of the lien and such release is recorded, although the vendor's lien note had been assigned to a bona fide holder before the execution of the release. 184

### 2. Preservation of Lien.

It is within the power of the endorsee of a vendor's lien note to take a written assignment of the vendor's lien and to place it upon record, and thus secure himself against the acts of the original owner of the lien.    A subsequent mortgagee has no such opportunity for guarding against the wrong, and it must be held that he who neglects a duty enjoined or the exercise of a privilege granted for his security, must suffer the loss, rather than one who was not in position to secure that protection...  .........  ........................................... 184

ERROR to Court of Civil Appeals for Fourth District, in an appeal from Mason County.

*Marshall Fulton*, for plaintiff in error.—1.   The Court of Civil Appeals erred in holding that the assignment of the note with vendor's lien is an instrument in writing concerning land, within the meaning of our registration laws, and as such ought to have been recorded in order to make it effectual against subsequent purchasers and encumbrancers for a valuable consideration, without notice; and that the plaintiff in error should have had the assignment of the note authenticated for record, and had it recorded in the county where the land was situated, for his protection against the subsequent encumbrances.   Senter v. Lambeth, 59 Texas, 259; Grace v. Wade, 45 Texas, 528; Briscoe v. Bronough, 1 Texas, 326; Edwards v. McKernan, 55 Mich., 520; Kelly v. Mills, 41 Miss., 267; Mississippi Valley Co. v. Railway, 58 Miss., 854; Warren v. Fenn, 28 Barb., 333; Kilpatrick v. Kilpatrick, 25 Miss., 124; Tucker v. Hadley, 52 Miss., 414; Lewis v. Caperton, 8 Gratt., 148; Macado v. Mack, 6 Mont., 601; Linch v. Audcock, 66 S. C., 85; Jenkins v. Adams & Wicks, 71

Texas, 1; Littleton v. Giddings, 47 Texas, 109; Wade on Notice, secs. 15, 19, 46, 330.

2. The Court of Civil Appeals erred in holding that the mortgagee had the right to rely upon the release by the vendor of the lien which secured the note sued on, and was not put on further inquiry in relation to the note, in the absence of notice of the assignment of the note. The court should have held that the recital of the vendor's lien in the deed was sufficient notice of the existence of the note and lien. A transfer of the note is not required to be recorded, but subsequent purchasers of the land must see to it that the note is paid or cancelled. A purchaser of the note secured by vendor's lien is not required to have his transfer recorded, or to have the transfer of the note proven or acknowledged for registration. Senter v. Lambeth, 59 Texas, 259; Willis & Bros. v. Gay, 48 Texas, 463; Littleton v. Giddings, 47 Texas, 109; Wade on Notice, secs. 15, 46, 330.

3. The court erred in not holding and deciding that the renewal of the note by the maker revived the vendor's lien, as against the mortgage, and should have decreed a foreclosure of the vendor's lien against the maker and the subsequent mortgagee. Mortgage Co. v. Kempner, 84 Texas, 102; Blackwell v. Barnett, 52 Texas, 332; Ware v. Bennett, 18 Texas, 794; Goldfrank, Frank & Co. v. Young, 64 Texas, 432; Herndt v. Patterfield, 9 N. W. Rep., 322; 2 Jones on Mort., sec. 1202; Hughes v. Edwards, 9 Wheat., 489; Mahone v. Cooley, 56 Iowa, 479; Hyer v. Pruyn, 7 Paige Ch., 465.

*C. Von Carlowitz*, for plaintiff in error, the mortgagee.—A mortgagee is a purchaser for value, and protected by our registration laws, and actual notice must be proven on him so as to defeat his right of recovery; and the holder of a vendor's lien note, in order to protect himself against the act of his vendor, should record an assignment of the note. Steffian v. Bank, 69 Texas, 513; Henderson v. Pilgrim, 22 Texas, 464; Jones on Mort., par. 956; Ogle v. Turpin, 102 Ill., 148; Brown v. Thompson & Ohmstede, 79 Texas, 62; Hamblen v. Folts & Walsh, 70 Texas, 132; Riggs v. Hanrick, 59 Texas, 570; Cole v. Kelsey, 2 Texas, 542; Hodges v. Taylor, 57 Texas, 199; Cason v. Chambers, 62 Texas, 305; Gruner v. Westin, 66 Texas, 217.

*J. B. Davies*, also for the mortgagee, filed an elaborate argument.

*Wright & Summerlin*, for defendant in error Myer.

BROWN, ASSOCIATE JUSTICE.—Plaintiff in error sued W. E. Wheeler as maker, Franz Bernhardt, Henry Kensing, and Max Myer, endorsers, and the land and mortgage bank, a subsequent encumbrancer, to recover judg-

ment upon the note hereafter set out, and to foreclose the lien of said note. The suit was discontinued as to Bernhardt and Kensing. Judgment was rendered in favor of Myer, because suit had not been brought within the time required by law to hold him liable as endorser. Wheeler made no answer. The land and mortgage bank answered, that the land was mortgaged to it to secure a loan of $25,000 made to Wheeler, without notice of plaintiff's lien. The court rendered judgment against Wheeler for the amount of the note, refusing to foreclose the lien as against the land and mortgage bank. Moran appealed, and the Court of Civil Appeals affirmed the judgment of the District Court. The facts, so far as necessary to an understanding of the point involved, are these: Kensing sold to W. E. Wheeler two surveys of land described in the note below, and took two promissory notes, one of which was sued upon, and is as follows:

" $400. MASON, TEXAS, May 24, 1884.

" On or before May 24, 1886, I promise to pay to the order of Henry Kensing the sum of $400, with interest at the rate of 10 per cent per annum from date hereof until paid, for value received.

" This note is given in part payment for survey number 111, Gulf, Colorado & Santa Fe Railway Company, containing 320 acres, and survey number 123, Houston East & West Texas Railway Company, containing 588 acres of land, in Mason County, Texas, this day deeded to W. E. Wheeler; and for the payment hereof, together with the interest thereon, according to the tenor and reading thereof, a vendor's lien is acknowledged. And in case of legal proceedings on this note I agree to pay 10 per cent of the amount as attorney fees.

" Witness my hand, at Mason, this 24th day of May, 1884.

" W. E. WHEELER."

Kensing made a deed to Wheeler of the same date, reciting the notes and retaining a vendor's lien upon the land, which was duly recorded. The note was by Kensing endorsed and delivered to Max B. Myer for value, who for value endorsed and delivered it to plaintiff, both endorsements being before its maturity.

October 20, 1886, Kensing, without the knowledge or consent of plaintiff, executed and delivered to Wheeler an instrument in writing, in which he acknowledged the payment of the two notes, and released the vendor's lien on the land described in his deed and notes. At the time the release was executed the plaintiff owned the note sued upon. The release was acknowledged and recorded in the proper records of Mason County on the 29th day of October, 1886.

On the 27th day of June, 1887, the land and mortgage bank, a foreign corporation authorized to do business in Texas, loaned to W. E. Wheeler $25,000, taking his note and a mortgage on a large number of tracts of

land, embracing those described in the note, which was duly acknowledged and recorded in Mason County on the same day. The land and mortgage bank had no notice of the note, except as appeared in the record of the deed from Kensing to Wheeler and the release thereof.

The plaintiff in error presents the case to this court upon three propositions, which may be expressed in one; that is, the court erred in holding that the land and mortgage bank, by its deed of trust, acquired a lien upon the land superior to that of the vendor's lien note in the hands of the plaintiff.

The transfer of the note sued upon carried with it the vendor's lien upon the land, and the recital in the deed from Kensing to Wheeler was notice to the land and mortgage bank that all of the purchase money had not been paid, and that the note sued upon had been executed to secure it.

The question to be determined is, Did the release of the lien upon the land, made by Kensing after plaintiff had acquired the note, protect the land and mortgage bank and give it priority, it having parted with its money to Wheeler upon the faith of the release, and without any notice that Kensing had transferred the note?

There is a conflict between two claimants, who are equally free from any intentional wrong, and without any knowledge of the wrong that was perpetrated by Kensing. The conflict must be settled by a resort to the principles of law which, though sometimes seemingly in conflict, can generally be reconciled upon sound reasons.

The note sued upon is negotiable, which in the hands of the plaintiff was not subject to any equities existing between Kensing and Wheeler. But this does not protect it against equities arising in favor of subsequent purchasers without notice and for a valuable consideration. For example, if the note had been in the form that it is, but there was no recital in the deed as to the purchase money being paid, the plaintiff's rights against Wheeler to enforce the lien would have been the same; but in that case, if another person purchased the land or took a mortgage upon it for valuable consideration, without notice, the lien could not be enforced as against such subsequent purchaser. Hence its negotiable quality does not govern as to the lien, but the law of notice becomes the controlling rule for determining the rights of the parties. It therefore becomes important to inquire what is the law of notice as applied to this case.

It is claimed that as the deed from Kensing to Wheeler gave notice to the land and mortgage bank that a note had been given for the purchase money, it should have sought out the owner and learned the truth as to its payment. In the first place, the owner of the note had the right to release the lien without having the note paid, and the release appearing upon the record, the land and mortgage bank had the right to rely upon the right as it appeared of record. The existence of the lien was the material point for it to ascertain; it was not concerned about the pay-

ment, if the lien were released. However, it is equally the duty of a subsequent purchaser or mortgagee to seek for the owner of the note, as in case of a mortgage as in this case, and we have seen that such a duty is not imposed by law. The record showed that Kensing was the owner of the note. His release executed and solemnly acknowledged was upon record, declaring that the notes were paid and the lien released. If application had been made to him, what more could he have said than this? If inquiry had been pushed beyond this, then to whom would it have gone for information? What limit would be placed to the scope of such a search? It would be palpably unreasonable to require such a fruitless inquiry.

In so far as it retained a lien upon the land to secure its payment, the note was substantially a mortgage, as mortgages are regarded in this State; that is, a security for the debt. 1 Jones on Mort., sec. 222; Kirk v. Williams, 24 Fed. Rep., 442; Dingley et al., Executors of Pinney's Estate, v. Bank of Ventura, 57 Cal., 467.

Considered as a note, it was not within the statute authorizing the record of instruments. But as a mortgage, it was entitled to registration, and must be recorded in order to affect subsequent innocent purchasers without notice and for a valuable consideration, if not mentioned in the deed. Saunders & Worley v. Hartwell & Chambers, 61 Texas, 679; Brown v. Thompson & Ohmstede, 79 Texas, 61.

In Henderson v. Pilgrim, 22 Texas, 464, one Means and his wife conveyed land to another Means, a brother; notes were given for the purchase money, and a mortgage and deed of trust were executed to secure their payment. The notes were negotiable, and the vendor transferred them and the mortgage to a third party, giving a written assignment of the mortgage. Subsequently the vendor, the mortgagee, released the mortgage and trust deed, declaring that the notes had been paid. Pilgrim and Stewart bought the land from the mortgagor after the release of the mortgage, and paid a valuable consideration, having no notice of the assignment of the mortgage or transfer of the notes. It was held, that the purchasers took a title as against the assignee of the mortgage, because it was not recorded, the assignment being held to be an instrument authorized to be recorded under our statute. The opinion is well sustained by authorities, of which we cite: Smith v. Ins. Co., 84 N. Y., 589; Phillips v. Bank, 18 Pa. St., 394; Ogle v. Turpin, 102 Ill., 148; Bowling v. Cook, 39 Iowa, 200; Ladd v. Campbell, 56 Vt., 529; Welch v. Priest, 8 Allen (Mass.), 165. Some States have held a contrary doctrine, but generally the decisions are based upon the fact that the laws of those States do not authorize the recording of such assignments. Dixon v. Hunter, 57 Ind., 278; Watson v. Dundee, 12 Ore., 474.

The case of Henderson v. Pilgrim settles the law in this State, that assignments of mortgages must be recorded in order to affect subsequent purchasers without notice, for a valuable consideration. We now come

.to inquire as to the effect of the principles established by the decision upon assignments of vendor's lien notes which secure the lien in terms.

In Henderson v. Pilgrim the court said: "We are of opinion that an assignment of a mortgage is 'a lien affecting the title to land,' 'a written contract in relation to land,' 'an agreement,' 'an instrument of writing of and concerning land' within the meaning of our registry laws, such as ought to be recorded to make it effectual against subsequent purchasers for a valuable consideration without notice." If an assignment of a mortgage, because it conveys a lien upon land, is required to be recorded, how can it be said that an assignment of a vendor's lien note which conveys the same character of lien should not be? The conclusion is irresistible that they are to be governed by the same rule, and both must be recorded for the same reason. It does not matter that the assignment may not have been in writing, although in this case the written transfer of the note effected the transfer of the lien at the same time. A mortgage may be transferred by parol, and in fact in this State passes with the transfer of the debt, without other evidence of right. It would be an inconsistent proposition to say, that a written transfer not recorded would not affect subsequent purchasers, but that a transfer by parol would affect their interests.

It is the policy of the law to require that all matters affecting the title to lands should be placed upon the public records, so that one who seeks to purchase it may safely judge of the validity of the title. When a purchaser who seeks to buy land has examined the records of titles, and finds nothing to indicate that there is an adverse claim, and he is not in possession of any facts that would put him upon inquiry as to any matter not of record, he has the right to presume that any person claiming an adverse right would have placed the same upon record, and that there is none. But in this instance the case is stronger for the land and mortgage bank, for it appeared that the person in whom the adverse claim had existed had released it, and there was nothing to notify him that any other person had become entitled to the lien.

It was within the power of the plaintiff to have taken a written assignment of the vendor's lien, and to have placed it upon record as the law required, and thus to have secured himself against the acts of the original owner of the lien. The land and mortgage company had no such opportunity for guarding against the wrong; and it must be held that he who neglects the performance of a duty enjoined, or the exercise of a privilege granted for his security, must suffer the loss, rather than one who was not in a position to secure that protection.

There was no error in the judgments of the District Court and the Court of Civil Appeals, and both judgments are affirmed.

*Affirmed.*

· Delivered June 27, 1894.