### RAGAN v. DAY et al.

No. 4599.

Court of Civil Appeals of Texas. Amarillo.

May 11, 1936.

Rehearing Denied June 8, 1936.

James W. Witherspoon, of Hereford, for appellant.

W. H. Russell, of Hereford, for appellees.

MARTIN, Justice.

The parties to this appeal will be designated as in the trial court.

Plaintiff sued defendants, Elizabeth Day, a feme sole, and M. H. Burum, to foreclose a vendor's and deed of trust lien on 200 acres of land in Deaf Smith county, Tex. The pleadings below sufficiently raised the legal issue which we decide. Trial was before the court, and judgment was for defendants.

The material facts are: On June 2, 1926, Elizabeth Day and husband conveyed to Carl P. Owen the 200 acres of land in controversy. This deed as part of the consideration for said land recited the execution and delivery of six promissory vendor's lien notes, payable to the order of defendant Day, the first for $2,500, and the other five for $500 each. A vendor's lien was expressly reserved in said deed to secure their payment, and a trust deed was also given as security therefor. On August 18, 1926, defendant transferred and delivered to plaintiff for a valuable consideration, and before the maturity of any of them, all of said series of notes, and also contemporaneously therewith executed and delivered a written transfer of her lien to said plaintiff. This written transfer was never filed for record by plaintiff. On February 18, 1928, Carl P. Owen and wife conveyed said land back to defendant Day by a warranty deed which recited in part:

"* * * For and in consideration of the sum of Five Dollars and other consideration paid by Elizabeth A. Day, a widow, as follows:

"Five Dollars and the further consideration of the release of said grantors from any and all obligation and liability upon six certain promissory notes, all dated June 2, 1926, Note No. 1 for $2500.00 due on or before one year after date, and Notes Nos. 2 to 6 inclusive each in the sum of $500.00; * * * said notes having been given as part of the purchase price of hereinafter described land, said notes being fully described in deed of conveyance from George M. Day and Elizabeth A. Day to Carl P. Owen, dated June 2, 1926."

This deed was duly filed for record in the county clerk's office of Deaf Smith county on March 19, 1928. Thereafter, on January 11, 1932, defendant Day conveyed by general warranty deed the said land to her codefendant, Burum. Contemporaneously therewith, she executed a release of all said series of notes to Owen. Such release recites in part: "Whereas, all of said notes, both principal and interest, have been to me paid, and by me cancelled, I, the undersigned, being the legal owner and holder of the same at the time of such payment and cancellation. * * *"

The last two instruments were duly delivered and recorded.

Plaintiff was the owner of said notes at all times on and after their transfer to him as set out above.

It is not denied that Burum bought said land for a valuable consideration and without any actual or constructive notice of such ownership, except such as might be visited upon him by the quoted recital in the deed from Owens to defendant Day. It will be noted that such recital releases Owens from personal liability on said notes, but does not in express terms cancel the lien or notes. The attention of Burum was called to this defect in his title by the attorneys examining the abstract of title pending the purchase, and the release from Day mentioned above was procured.

The record below and here presents this question: Was Burum an innocent purchaser of said land, so as to entitle him to protection against the prior unrecorded transfer of said lien held by plaintiff?

Stated otherwise, did the quoted recital in the Owens deed to Day put Burum on notice that the original lien and notes were outstanding in some party other than defendant Day?

We are of the opinion that Burum was entitled to rely upon the record and was under no duty to make an inquiry concerning a transfer, the existence of which was unknown to him, and not suggested by anything shown in his line of title. Of whom would he have inquired? He procured the said release from Mrs. Day, reciting her ownership of the notes. Owens had theretofore recognized her as such owner by accepting from her a release of liability of said notes. The record not only fails to raise any question about her ownership of the notes on the date of Burum's purchase of the land, but affirmatively shows her

claim of ownership of the entire series in controversy. In other words, the quoted recitation may have sufficiently given notice that the notes in question remained unpaid, but the same instrument evidences a claim of ownership of such notes by defendant Day. Otherwise, how could she release Owens from personal liability? The defendant Burum therefore could not be said to have notice of ownership in a third party from recitals in an instrument that affirmatively disputed any such inference. We here quote language from Supreme Court authorities believed applicable to the present situation:

"It was within the power of the plaintiff to have taken a written assignment of the vendor's lien, and to have placed it upon record, as the law required, and thus to have secured himself against the acts of the original owner of the lien. The Land & Mortgage Company had no such opportunity for guarding against the wrong; and it must be held that he who neglects the performance of a duty enjoined, or the exercise of a privilege granted for his security, must suffer the loss, rather than one who was not in position to secure that protection." Moran v. Wheeler, 87 Tex. 179, 27 S.W. 54, at page 56.

" 'When a purchaser who seeks to buy land has examined the records of titles (notes in the present case), and finds nothing to indicate that there is an adverse claim, and he is not in possession of any facts that would put him upon inquiry as to any matter not of record, he has the right to presume that any person claiming an adverse right would have placed the same upon record, and that there is none.' * * *

"Under the foregoing epitomized statement of the facts it appears that the real question presented is whether the lodge had the right to rely upon the record without inquiry into the existence of a transfer not known to it, by which the lien upon the land had been passed to another who had neglected to place his assignment upon the records.

"The answer to the question is controlled by Moran v. Wheeler, 87 Tex. 179, 27 S.W. 54. It was held in that case that the subsequent purchaser was not required to inquire into the existence of such transfer. In the later case of Rogers v. Houston et al., 94 Tex. 403, 60 S.W. 869, 870, a ques-

tion was certified which Judge Brown states was very much the same as that in the Moran Case. The certified question reads: 'Did the burden rest upon Rogers to prove that he did not have actual knowledge that Brown had transferred the $180 note which was given to him by Davis, and which was described in the deed from Brown to Davis?'

"The court answered that the burden inquired about did not rest on Rogers. * * *

" 'An affirmative declaration, or an act equivalent to such declaration, by the record owner of the note that same had been paid, satisfied, or canceled, or the lien released or extinguished, would protect one dealing with the land in good faith for a valuable consideration and without notice.' " Pustejovsky et al. v. K. J. Z. T. Lodge et al., 124 Tex. 504, 79 S.W.(2d) 1084, 1085.

The evidence in our opinion sufficiently supports the trial court's judgment, and it is therefore affirmed.